**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE SERIES 7 BROKER QUALIFICATION EXAM SCORING LITIGATION <br><br> This Document Relates To: <br> ALL CASES | Misc. Action No. 06-355 (JDB); <br> MDL Docket No. 1772 |

**NASD'S SUPPLEMENTAL MEMORANDUM**

On April 25, 2007, the Court ordered that each party submit a supplemental memorandum addressing a specific question:

> Assuming, counterfactually, that all of the alleged actions forming the basis of the consolidated complaint had (consistent with a hypothetical statutory and regulatory structure) been carried out by the SEC alone, without the assistance of an SRO or other non-governmental entity, would the SEC be immune from any or all of plaintiffs' claims? In answering this question, the parties should address, *inter alia*, (1) whether the Tucker Act would provide federal subject-matter jurisdiction over plaintiffs' contract claims; and (2) whether the Federal Tort Claims Act would provide federal subject-matter jurisdiction over plaintiffs' negligence or negligent misrepresentation claims.

NASD submits that all of the claims asserted against NASD in the Consolidated Complaint—negligence, negligent misrepresentation, and breach of contract—would be barred by sovereign immunity if alleged against the SEC under the circumstances the Court has hypothesized.

At the outset, it is important to distinguish the Court's hypothetical from the facts of the case at hand. The SEC, as an agency of the United States Government, may not be sued except pursuant to an express waiver of sovereign immunity. *See, e.g., Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659, 666 (D.C. Cir. 2006). The Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671 *et seq.*, and the Tucker Act, 28 U.S.C. § 1491(a)(1), are congressionally crafted statutory waivers of the sovereign immunity of the United States. In

1

structuring these limited waivers, Congress weighed the effects of waiver on the administration of the government and the maintenance of the federal coffers against the interest in facilitating private redress to individuals. *See, e.g., Gray v. Bell*, 712 F.2d 490, 506 (D.C. Cir. 1983).

Under the hypothetical circumstances proposed by the Court, the SEC would retain its sovereign immunity against all of the plaintiffs' claims: The negligence and negligent misrepresentation claims would be barred by multiple provisions of the FTCA, and the contract claim (to the extent the plaintiffs have not abandoned it) would not fall within the waiver of sovereign immunity effected by the Tucker Act.

**I.     The SEC Would Be Immune From The Plaintiffs' Negligence And Negligent Misrepresentation Claims Under The Federal Tort Claims Act**

Although the FTCA waives sovereign immunity against certain common-law torts, the FTCA contains strict procedural and substantive prerequisites for any tort suit against the Government. 28 U.S.C. §§ 2671-2680; *see also, e.g., Jayvee Brand, Inc. v. United States*, 721 F.2d 385 (D.C. Cir. 1983). If a plaintiff fails to meet his burden, the court is without jurisdiction to hear his claims. *Jayvee Brand*, 721 F.2d at 388. As a waiver of sovereign immunity, the FTCA's authorization of suit is to be construed narrowly in favor of the Government. *See, e.g., Koch v. United States*, 209 F. Supp. 2d 89, 94 (D.D.C. 2002).

**A.     The Intentional Tort Exception Would Bar Subject Matter Jurisdiction Over The Plaintiffs' Negligence And Negligent Misrepresentation Claims If Asserted Against The SEC**

Both of the tort claims nominally asserted by the Consolidated Complaint—negligent misrepresentation and negligence—fall within the scope of the FTCA's "intentional tort exception" because both claims *arise out of* an alleged misrepresentation. Under this exception, the Government retains sovereign immunity against "[a]ny claim *arising out of* assault, battery, . . . libel, slander, *misrepresentation*, [or] deceit." 28 U.S.C. § 2680(h) (emphases added).

The intentional tort exception "comprehends claims arising out of negligent, as well as willful, misrepresentation." *United States v. Neustadt*, 366 U.S. 696, 702 (1961). Accordingly, the plaintiffs clearly could not sue the SEC for negligent misrepresentation.

Moreover, the intentional tort exception would also bar the plaintiffs from asserting against the SEC a negligence claim like the one in the Consolidated Complaint asserted against NASD. Although the plaintiffs plead their tort claims as two separate counts—negligent misrepresentation and negligence—the underlying theory is identical. Under both counts, the damages allegedly sustained by the plaintiffs were caused solely by the reporting of incorrect scores on the Series 7 exam (and of the resulting denials of registration) to the plaintiffs' employers and, perhaps, the plaintiffs. *See* Consol. Compl. ¶ 57 (alleging damages from negligence "including adverse employment consequences"); *id.* ¶ 60 (alleging damages from negligent misrepresentation on the theory that reliance on incorrect score reports caused the plaintiffs to suffer adverse employment consequences). The representation that the plaintiffs failed the Series 7 exam is not only the key to both claims, but the *only* factual basis for the assertion of damages on the negligence claim.

Because the plain language of the intentional tort exception extends to claims *arising out of* misrepresentation, the FTCA plainly bars the use of artful pleading (including pleading general negligence) to circumvent that exception. The Supreme Court has recognized on more than one occasion that a plaintiff cannot avoid the reach of § 2680(h) by averring that a claim arises out of negligence, when the substance of the claim is indistinguishable from one of the causes of action listed. *See, e.g., Neustadt*, 366 U.S. at 706; *United States v. Shearer*, 473 U.S. 52, 55 (1985) (applying § 2680(h) to a claim of negligent failure to prevent assault and battery).

To "assess[] the nature of [the plaintiffs'] claim" and determine whether it is barred, the Court "must scrutinize the alleged cause of [the plaintiffs'] injury." *Kugel v. United States*, 947 F.2d 1504, 1507 (D.C. Cir. 1991). Here, the only alleged injury resulted from an incorrect statement, and § 2680(h) "relieves the Government of tort liability for pecuniary injuries which are wholly attributable to reliance on the Government's negligent misstatements." *Block v. Neal*, 460 U.S. 289, 297 (1983). For example, in *Neustadt*, the Supreme Court confirmed that "when the loss suffered by the injured party is caused by the breach of [the Government's] duty to use due care in obtaining and communicating information," the action is in substance one for negligent misrepresentation, and the plaintiff cannot plead around the intentional tort exception by claiming to sue "on the sole basis of the underlying negligence." 366 U.S. at 704, 706.[1]

Thus, both of the plaintiffs' tort claims—negligent misrepresentation and negligence—would be barred by the FTCA's intentional tort exception because both claims arise out of the same alleged misstatement—the report that the plaintiffs had not passed the Series 7 exam.

### B. The Discretionary Function Exception Would Also Bar Subject Matter Jurisdiction Over The Plaintiffs' Negligence Claim If Asserted Against The SEC

To the extent that the plaintiffs assert a claim for negligence that is not based on an alleged misrepresentation or misstatement, it would independently be barred by the FTCA's "discretionary function exception," which excludes from jurisdiction "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This exception was "designed to preclude

---

[1] Although a negligence claim is not barred if it arises from a duty that is "distinct from any duty to use due care in communicating information," *Block*, 460 U.S. at 298, that is not the case here.

4

application of the [FTCA] to a claim against a regulatory agency, such as . . . the Securities and Exchange Commission, based upon an alleged abuse of discretionary authority by an officer or employee, whether or not negligence is alleged to have been involved." *Gray v. Bell*, 712 F.2d 490, 509 n.55 (D.C. Cir. 1983) (citing H.R. Rep. No. 2245, 77th Cong., 2d Sess. 10 (1942)).

To analyze whether a claim is barred by the discretionary function exception, courts apply a two-part test:  First, "a court must . . . consider whether the action is a matter of choice for the acting employee . . . . [T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz v. United States*, 486 U.S. 531, 536 (1988); *see also United States v. Gaubert*, 499 U.S. 315, 322-23 (1991).  Second, "assuming the challenged conduct involves an element of judgment, a court must determine whether that judgment is of the kind that the discretionary function was designed to shield." *Berkovitz*, 486 U.S. at 536.  In performing this analysis, the court focuses on the nature of the conduct challenged. *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 813 (1984).

The conduct at issue is registration, including qualifications testing, of individuals within the securities industry.[2]  *See, e.g.,* Mem. of Pts. & Auth. in Supp. of NASD's Mot. to Dismiss

---

[2] The Court's hypothetical posits that no non-governmental actors assist the SEC.  However, if an independent contractor were to assist the SEC (performing functions similar to those of EDS in this case), a host of other issues would arise.  Briefly, the SEC would be immune from an action for the negligence of an independent contractor. *See* 28 U.S.C. § 2671; *Macharia v. United States*, 334 F.3d 61, 68 (D.C. Cir. 2003) ("[A] contractor's negligence may only be imputed to the United States if the contractor's 'day-to-day operations are supervised by the Federal Government.'").  And claims alleging the negligent supervision of a contractor (as the plaintiffs allege here, *see, e.g.,* Consol. Compl. ¶ 31) are also barred by the discretionary function exception. *See Macharia*, 334 F.3d at 69; *see also, e.g.*, *Guile v. United States*, 422 F.3d 221, 231 (5th Cir. 2005) ("Supervision of a contractor's work, including the degree of oversight to exercise, is inherently a discretionary function."); *cf.*

[Footnote continued on next page]

11-17 [hereinafter "NASD Br."].  No "federal statute, regulation, or policy specifically prescribes a course of action" for the SEC to follow in regulating the registration of individuals and the administration of qualifications exams.  *Berkovitz*, 486 U.S. at 536.

To the extent that the plaintiffs' claim rests on the choice of software or internal supervisory decisions, Consol. Compl. ¶¶ 30, 31, it is foreclosed because such a claim goes to the heart of the "feasibility and practicality of a government program with respect to staffing and funding and the efficient allocation of agency resources."  *Kirchmann v. United States*, 8 F.3d 1273, 1277-78 (8th Cir. 1993) (citations and internal quotation marks omitted).  The discretionary function exception protects just such policy decisions.  *Id.*

Similarly, regulating the admission of brokers into the securities industry, including the administration of qualification exams, is unquestionably the type of discretionary function that the FTCA was intended to protect.  "[W]hatever else the discretionary function exception may include, it plainly was intended to encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals."  *Varig Airlines*, 467 U.S. at 813-14.  The legislative history confirms that the SEC's regulatory functions are a prime example.  *See id.* at 809-10 (citations omitted).  Thus, the SEC's regulation of registration, including qualifications testing, would be protected from suit by the discretionary function exception.

The plaintiffs cannot avoid this result by attempting to slice the regulatory function protected by the discretionary function exception into smaller and smaller pieces until they locate a "nondiscretionary" one.  By characterizing the conduct at issue as "ministerial" or "merely a computer glitch," Pls.' Mem. of Law in Opp. to Defs.' Mots. to Dismiss 11, 2, the plaintiffs

---

[Footnote continued from previous page]
  NASD Reply 8 (explaining that the supervision of EDS is not a ministerial function).

attempt to draw a distinction that the FTCA does not permit. Many discretionary decisions involve a connected course of conduct, and the FTCA does not allow plaintiffs to sever the connections and focus myopically on a single purportedly "nondiscretionary" element.

The D.C. Circuit has repeatedly refused to permit FTCA suits based on conduct that is "insufficiently separable from" or "inextricably tied to" discretionary decision-making. For example, the D.C. Circuit has rejected a plaintiff's attempt to sue under the FTCA for prosecutors' allegedly negligent "implementing activities" following an initial decision to conduct an investigation. *Gray*, 712 F.2d at 515. "[T]he improper and tortious actions allegedly undertaken by the defendants [we]re *too intertwined* with purely discretionary decisions of the prosecutors to be sufficiently separated from the initial decision to prosecute." *Id.* at 515-16 (emphasis added). Because the implementing acts were "*insufficiently separable* from the discretionary decision to initiate prosecution," and because the entire dispute took place in the context of a governmental function "where courts traditionally have been quick to find immunizing discretion," the court held the negligence claims could not proceed under the FTCA. *Id.* (emphasis added); *see also id.* at 516 (citing *Payton v. United States*, 679 F.2d 475, 482 (5th Cir. Unit B 1982) (en banc), which holds that "[t]o withstand a motion to dismiss, an allegation challenging the performance of [a] ministerial act must be sufficiently distinguishable from a complaint disputing the . . . exercise of [a] discretionary function"). The D.C. Circuit recently revisited and reaffirmed this position in *Sloan v. HUD*, 236 F.3d 756 (D.C. Cir. 2001), finding an investigation "inextricably tied to" a quasi-prosecutorial decision when "[t]he complaint does not allege any damages arising from the investigation itself, but only harm caused by the suspension to which it assertedly led." *Id.* at 762.

Here, the scoring of the Series 7 exam is inextricably intertwined with the unquestionably discretionary function of regulating admission of brokers into the securities industry. The plaintiffs allege no distinct injury from the alleged "computer glitch"; the only claimed injury arises from the denial of registration. The complaint must be taken as a whole, not parsed to a degree that "merely would elevate the form of [the] complaint over its essence." *Gray*, 712 F.2d at 516. And here, the basis of the plaintiffs' claim is "not 'sufficiently separable from [the] protected discretionary decision[],'" so it "'cannot by itself support suit under the FTCA.'" *Sloan*, 236 F.3d at 762 (quoting *Gray*, 712 F.2d at 515-16) (alterations in original).

In short, because the gatekeeping function, of which the administration of the Series 7 exam is an integral part, is inherently both regulatory and discretionary, the SEC would also be protected by the FTCA's discretionary function exception from plaintiffs' claim of negligence.

## II.    The Tucker Act Would Not Provide Jurisdiction Over The Plaintiffs' Breach Of Contract Theories If Asserted Against The SEC

The plaintiffs have abandoned their breach of contract claim against NASD.[3] Reply Mem. in Supp. of NASD's Mot. to Dismiss 20-23 [hereinafter "NASD Reply"]. But even if they sought to resurrect that claim and (hypothetically) assert it against the SEC under the Tucker Act, the claim would fare no better.

The Tucker Act waives sovereign immunity against "any claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). The Tucker Act "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). Thus, to

---

[3] To the extent that the plaintiffs press a breach of contract claim against NASD as third-party beneficiaries to the contract between NASD and EDS, that claim was not raised in the Consolidated Complaint and is not supported by its allegations. NASD Reply 20-23. It, too, would be barred by the Tucker Act. *See* EDS Supplemental Mem. 8-9.

8

invoke jurisdiction under the Tucker Act, the plaintiffs would have to identify and plead an independent contractual relationship that provides a substantive right to money damages. *See Kahn v. United States*, 201 F.3d 1375, 1377 (Fed. Cir. 2000).

The plaintiffs have failed to identify such a valid contractual relationship. They claim to have an implied contract that includes terms "assur[ing] the [plaintiffs] that the exams would be correctly scored" and that they and their employers would be "provide[d] . . . with accurate and correct scores." Consol. Compl. ¶ 46. But the SEC cannot be held liable on a contract implied-by-law. *Hercules, Inc. v. United States*, 516 U.S. 417, 423 (1996). And an "implied-in-fact contract cannot exist if an express contract already covers the same subject matter," as is the case here. *Trauma Serv. Group v. United States*, 104 F.3d 1321, 1326 (Fed. Cir. 1997); NASD Br. 33-35 (Form U4 covers the same subject matter as the putative implied contract).

Furthermore, to plead a contract with the SEC, whether express or implied, the plaintiffs would have to demonstrate the parties' mutual intent to contract, including offer, acceptance, and consideration, and the actual contracting authority of the Government representative who ratified or entered into the alleged contract. *See, e.g., Quiman, S.A. de C.V. v. United States*, 39 Fed. Cl. 171, 177 (1997). No such allegations have been or could be made here.

Without the existence of a valid contract, the plaintiffs' claim would not fall within the Tucker Act's limited waiver of sovereign immunity and accordingly would be barred.

### III. Even Were The Court To Conclude That The SEC Hypothetically Might Not Be Immune Under the FTCA Or Tucker Act, NASD's Absolute Immunity Would Still Bar This Suit

As the Court noted, its hypothetical is "counterfactual[]." Sovereign immunity is not completely comparable to the immunity that extends to NASD's performance of regulatory functions. This immunity is based in part on NASD's functions and in part on the structure of the Exchange Act. *See* NASD Brief 9-25; NASD Reply 1-12. Because the origins, purpose, and

9

scope of SRO immunity are distinct from the sovereign immunity waived under certain circumstances by the FTCA and the Tucker Act, it is conceivable that NASD may be protected by immunity when performing certain regulatory functions, even when the SEC's sovereign immunity might be waived if it were to perform the same functions. For example, the Exchange Act requires NASD to enforce just and equitable principles of trade, a duty not given directly to the SEC. *See* 15 U.S.C. § 78*o*-3(b)(6). In doing so, NASD may deny registration to a member, a function for which it would be immune. *Id.* § 78*o*-3(g)(3)(A)(ii). NASD's immunity accordingly extends to actions that the SEC does not and would not undertake. Thus, irrespective of the answers to the Court's hypothetical, NASD is entitled to dismissal based on its absolute immunity, and on the other grounds asserted in the briefing.

\* \* \*

For the foregoing reasons, under the circumstances hypothesized by the Court's April 25 Order, the SEC would be immune from all claims asserted in the Consolidated Complaint.

Dated: May 10, 2007

OF COUNSEL:
John J. Flood, D.C. Bar No. 269837
NATIONAL ASSOCIATION OF
SECURITIES DEALERS, INC.
1735 K Street, N.W.
Washington, D.C. 20036

Respectfully submitted,

By: /s/ F. Joseph Warin
F. Joseph Warin, D.C. Bar No. 235978
William M. Jay, D.C. Bar No. 480185
Jennifer J. Schulp, D.C. Bar No. 497742
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500

*Attorneys for Defendant*
*National Association of Securities Dealers, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of May, 2007, I caused NASD's Supplemental Memorandum to be served on all parties required to be served by the means listed below:

All parties whose counsel are registered with the Court's CM/ECF system were served electronically.

The following parties were served by mailing one copy of the document by U.S. mail, first class postage prepaid, to their counsel at the addresses listed:

John Balestriere
BALESTRIERE PLLC
225 Broadway, Suite 2700
New York, NY  10007

*Attorney for Andrew Crabbe and Linda Cutler*

Joseph Tacopina
*Of Counsel*
ARTHUR L. AIDALA & ASSOCIATES, P.C.
597 Fifth Avenue
New York, NY  10017

*Attorney for James Bruen*

Philip J. Fowler
GLOOR LAW GROUP, LLC
225 West Wacker Drive
17th Floor
Chicago, IL 60606

*Attorney for Louis Wierenga*

William W. Graham
GRAHAM & ERVANIAN, P.C.
604 Locust Street, Suite 630
Des Moines, IA  50309

*Attorney for Christopher Wilson*

Jeffrey S. Nobel
SCHATZ NOBEL IZARD, P.C.
20 Church Street, Suite 1700
Hartford, CT  06103

*Attorney for Alex Ruimerman*

/s/ F. Joseph Warin

F. Joseph Warin